This is Allstate Property and Casualty, um, counsel, whenever you're ready to make your speech. Thank you. Please, the court, Ms. Hantel. My name is Bill Alexander, and I'm here representing the plaintiff, Mr. Williams. I'm here asking the court to find that a policy of insurance affects tax for underinsured motorists. And I will talk about a three-step analysis that I have that, uh, I will say is different than anything you will find in case law. Uh, I'll acknowledge that right off. My analysis is that in this policy, the liability coverage stacks. Instead of 100,000, it should be 300,000. If the liability coverage stacks, then uninsured motorist pursuant to statute must equal liability coverage. And that's because this, by statute, the policyholder must be offered equivalent coverage to their liability. He, he must have equivalent unless he, in writing, rejects it, which there is no proof that there's any rejection. And finally, if the uninsured stacks, then the underinsured motorist must also equal the same amount. Before I address this question of stacking, uh, I would like to answer the question, why does all this make a difference? Allstate chose to write a policy that says that the amount paid by the at-fault driver, in this case that was $50,000, plus whatever Allstate paid in medical payment coverage, which was $5,000, must be used to reduce the limits. And the key word is the limits. Why they look like this, I don't know. Uh, we don't normally think of it in that manner. We normally think of a set-off as starting at the bottom, working up, and not from the top down. And my point is that if, in fact, the underinsured motorist equals $300,000, then the limits are reduced by $55,000 to leave $245,000 of available insurance. Okay, and I was trying, I was having trouble figuring that out as to, because there was, there was arbitration. And at arbitration, your client's damages were determined to be $85,000. My question was going to be, I wanted to make sure they weren't asked to determine the amount over $50,000. That was the total damages, $85,000. They determined $85,000. Right, so you would, if the policy were written differently, if it said there would be a set-off. As we normally think of it. Right, you wouldn't be here. That's correct. Okay, because it would be moot. But what you're saying is the limits should be $300,000, I guess it is. And you're saying the way the policy reads, deduct $55,000 from $300,000, and the limits are then $245,000 left. Right. And so that's how you calculate that they still owe you some money. And they paid $45,000. Right. And so we're owed $40,000. Okay. Now, this is not the traditional way that these come about. And I fully realize that. And why they wrote this policy in this manner, I don't know. But they wrote the policy, and this is a contractual case. The insurance company has a right to pay more than what the statute actually provides for. And they evidently chose to do that. If they made a mistake in writing that policy, that's not a problem for my client. It's their problem. I'll go back to the question of statute. In this case, the liability coverage is listed for each vehicle. And with a separate premium for each vehicle. Hobbs, and if anybody wants a citation at any time, please let me know that it's all in the brief. Hobbs is a sentinel case in the state of Illinois on statute. From 2005, from the Supreme Court. They indicated in that case that in a situation like this, where the premium is stated for each vehicle, and the coverage is stated, that they would have no problem finding an ambiguity in the policy. Now, that particular decision they made was on policies where it was not stated for each vehicle. Here we have three vehicles where they're stated separately. This court, the 5th District, followed Hobbs with the Johnson case in 2007. And in that case, this court found stacking applied. Now, Johnson was an underinsured motorist claimant. And in 2010, this court, in the case of Progressive v. Kosher, even though that case was different from what we call normal stacking, that case has many quotes in it that find that in this situation, there is stacking of insurance. I'm happy to come before you today and say that this is not the only district that has now found stacking to apply in these situations. And the reason I say I'm happy about that is because I run into defense counsel and courts throughout the state that keep telling me the 5th District is the only one to find stacking. But the 3rd District is now... The crazy district. I didn't say that. I didn't say that. But the 3rd District, as I was preparing, has entered an opinion that is not yet published. I acknowledge the case of Bowers. It came out in Westlaw the first part of November. And if I were to... It's a Rule 23? No. You're saying it's just not been published yet? It just hasn't been fully published. It does not say Rule 23. Okay. And if I had had that case before I wrote my brief, I think I would have plagiarized it. Because it goes right down the line and finds why stacking should apply. Are you requesting leave to cite that case as additional authority? I do. And I have a cite that I'd like to make right now. It's Bowers and it's in the Westlaw. It's 2014, Hill Ave. 3rd, 130-655. Could you repeat that? I can. 2014, Hill Ave. 3rd, 130-655. And if you would formally submit that, the council will give you an opportunity, of course, to respond. All I will do is cite it, Your Honor. That's fine. And I will do that by a motion, if that's permissible. I would like to just bolster my arguments about the stacking and what the court, what particularly the Fifth District has found, is to make a quote from the case, the 2010 case, Progressive v. Kosher. And in that case, as court said, generally these cases have found that where the declaration page lists the policy limits for uninsured or underinsured loaner's coverage more than once, this creates an ambiguity regarding whether the coverage may be stacked. And that ambiguity must be resolved in favor of the insurer. So my point to this court is that the liability limits in this policy stack. I've already set forth why I think that then relates to uninsured and underinsured. But one of the arguments, as I read the defendant's brief, is that the language in the policy clearly prohibits stacking. I have two responses to that. The first response is, I'm not sure what difference it makes what the language in the policy says if the declarations page creates this situation where you can see that an ordinary person would believe that they're entitled to stack the liability limits, then what difference does it make how clear the language within the policy is? But the second part of that is that in their policy where they talk and try, I agree, they try to limit stacking. The section is titled Limits of Liability. And in that section it says the limits, that's a plural limits, shown on the policy declarations are the maximum we will pay for any single accident involving an insured product. And if you're looking for the reference to that, the page of policy is hard to get, but it's in 49 of the appendix. Let me ask a question, Mr. Alexander. I understand what you're saying. The way Allstate has this set up with their declarations page is very similar to the Bruder Dicta, whatever you want to call it, Goldman versus Pekin Insurance. One difference, however, is on this deck sheet, there is language that says, but first it has the limits for uninsured motorist insurance, and then parenthetically it says includes underinsured motorist protection. But then it goes on to say uninsured motorist insurance limits of insured vehicles cannot be stacked or aggregated. That's language that was not in those other cases, as I recall. You're correct. Does that make a difference? Well, it would make a difference if liability portion does not stack. Okay, and that's your other argument. I mean, I know we all know what they're trying to do. They're trying to say that underinsured does not stack, and they say that in the policy. They say that right there on the deck sheet. But if liability coverage stacks, how can we get away from stacking the underinsured? I don't care what the policy says. The statute should control it. And I guess your other question would be the fact that that language is included on uninsured motorists and not in liability would then bolster your argument that liability stacks. As a matter of fact, I said that in my reply brief. Okay. Yes, that's correct. But also I'm saying that their language to prohibit liability stacking is in itself, in my opinion, ambiguous. In that it talks about the limits, the plural limits on the declarations pages are the maximum we will pay, which to me would lead an ordinary person to believe that they get all of those. Your Honor, I just made reference to the fact that talking about an ordinary person and what an ordinary person would see. Every time I write a brief on insurance policies, I quote the Gillom case, which I have quoted in my brief, which the Supreme Court issued in 2005. And they talk about that you have to look at it from the standpoint of an ordinary person and what they would reasonably think when they read these type of agreements. Sometimes we as practicing attorneys get too, have seen this too much. We leap right to conclusions and we don't step back and try to see what a person that is not familiar with these kind of policies might think. And that's the whole point about this is that all state has prepared a contract that has problems. And those problems should be taken and go against them and not for them. They have not made a clear indication of what coverage my client is entitled to. And my client is not a practicing attorney, is not familiar with these things. And we need to step back. And I have problems myself doing that in my practice. But what I'm emphasizing is that we do need to look and look at it in that respect. Unless there are other questions, I have nothing else at this point. I don't believe so. Thank you, counsel. Thank you. Counsel. Good afternoon, Your Honors. May it please the Court, Mr. Alexander. My name is Christine Anto. I represent Allstate Insurance Company. I think as, as Your Honor pointed out in your questioning, the first issue here that Allstate thinks is at the forefront as to why a trial court's decision should be affirmed is that where an arbitration panel decided that Mr. Williams' injuries were only $85,000, not only, they were $85,000, and he has already been paid in excess of that amount between the money from Allstate paid on the arbitration award and the money from the underinsured at-fault driver's insurance company. Why are we even talking about staffing? Did the trial court decide this case on mootness? They decided it on two grounds. They first of all said that because he's been fully compensated based on the arbitration award, it is moot, and then they also went extra step and said that Allstate's policy language clearly and unambiguously precluded staffing. Basically said it wouldn't have stacked anyway. Correct. What about this language, and I'm looking at, under limits of liability, page 14 of the policy, just under number three. It does say, if the accident involves the use of an underinsured motor vehicle, the limits for this coverage will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured motor vehicle, including partial payments made by an insolvent insurer. It does pretty plainly say the limits will be reduced. It does say that, Your Honor, because I think when you're talking about an uninsured or an underinsured, in particular an underinsured motorist claim, the first determination is what limits are available, because the limits for an underinsured coverage are always affected by what the at-fault driver has. And so the first step you have to decide is what limits are potentially available, and here that's done by taking Allstate's $100,000 of underinsured motorist coverage that its policy provides and subtracting what the at-fault driver here had, which was $50,000, to come to a determination that, at the forefront, an underinsured motorist claim is made, and there is potentially $50,000 available. The next step, and even taking it to the next step. Let's take another example. Sure. Let's say, forget stacking for just a minute, let's just say this was a $300,000 underinsured limit. Would you take $300,000 and reduce it by the $55,000 to determine what the limit is? Yes, you would, and so that's what limits are available. You then have to go to the next step. What does the claim work? And the uninsured motorist statute in Illinois, as well as the language in the Allstate policy, provide arbitration as the venue to adjudicate what that claim is worth. Okay, so let's back up then. Let's say it was $300,000. You deduct $55,000 or $50,000. Let's keep it simple. Sure. So you've got 250,000 limits, and the arbitration says it's worth $85,000. Does it get the whole $85,000? No, because he's gotten $50,000 already. Okay, well, that's a different set. I mean, where does it say that gets set off in the policy? Sure. Under that same section, if you go back one page to page 13, the last line on page 13, damages payable will be reduced by, one, all amounts paid on behalf of the owner or operator of the uninsured auto or anyone else responsible. Well, that's uninsured. And if you look at the definitions, it defines uninsured to include underinsured. These phrases are used interchangeably. I guess my question, though, is, I mean, if you go through all that about payable by an uninsured, and then the very next paragraph is, if it involves an underinsured motor vehicle. Right. Well, that's to determine the limits. But to take this case out of an underinsured claim, an insurance company doesn't pay more than the claim is actually worth. Mr. Williams made a comment in both his brief and today that all states could agree to pay more. Well, while it can agree to any limits that its insured wants, that doesn't mean it pays more than a claim is worth. And here we had a panel of arbitrators who were asked to decide what Mr. Williams' damages were as a result of this accident. And they came up with the $85,000. Under counsel's addition, Mr. Williams should receive $140,000 for a claim that an arbitration panel determined was worth $85,000. And that would be the $50,000 from the underinsured motorist claim, the $5,000 that it received from all state medical payments, and the $46,000 in change that all states paid based on the arbitration award. That gives the plaintiff here a windfall, an amount more than his damages for this accident. And the uninsured motorist statute and the case law interpreting it is clear that that is not the intent of uninsured motorist coverage, to give a windfall. It's to put them in the same position. And here he's, we don't even have to look if he's in the same position as if he had 100 or 300 in uninsured motorist coverage because his damages were adjudicated to be $85,000 and he's received in excess of that amount already. So my first point to the court is that we don't even need to talk about staffing and the policy language and all the cases that have addressed staffing because plaintiff here has been fully compensated regardless of whether the uninsured limits were $100,000 or $300,000. Now, if we are going to get to the staffing issue, we're going to determine that it is pertinent. The language in the all-state policy clearly and unambiguously prohibits staffing in this situation. And we can talk about all the cases. They've all been cited in the briefs. Your honors are all familiar with these staffing cases. Here what we have is a policy that on the death page has a statement that precludes staffing. The uninsured motorist coverage in the body of the policy also has a provision precluding staffing. In addition, the general conditions in the policy has a provision precluding staffing. And the liability section of the policy has a provision prohibiting staffing. This is distinguishable from the cases in which courts have found that staffing is allowed. In those cases, there has usually only been an anti-staffing provision in the general conditions that broadly referenced limits. And the courts have found when you compare that language with a death page that may list more than one limit, there could be an ambiguity. Here we don't have that because we have anti-staffing provisions that specifically refer to the liability limits, the uninsured limits, and then an umbrella that applies to all limits. So we have a more specific language on top of the language on each death page that specifically states that uninsured motorist coverage cannot be staffed. This same language was construed to prevent staffing by the first district in Allstate v. Gonzalez-Loya and the second district in Strickland. And this district, even in the Cochran case that counsel referred to, admitted, and it was in dicta, that its inclination would be that this same language would unambiguously prohibit staffing. Admittedly, that case did not turn on that decision, and it was in dicta. But it was looking at this same type of language. And I believe that language, that case didn't even include four anti-staffing provisions like our policy does here today. Mr. Alecander mentioned how an ordinary person would look at this death page, where it does include an anti-staffing provision for uninsured coverage, but not for liability coverage. And I submit, you can't just look at the death page. The case law all says that. You have to look at the policy as a whole. And when you do look at the policy as a whole, the liability section of the policy includes an anti-staffing provision. There's no reason, and counsel points to no reason in his briefs or here today, why that language should not be enforced as it was enforced by all these other courts that have reviewed this same language in policies like the Allstate policy. So even if you're just looking at the liability coverage, when you compare the death page with the liability coverage in the body of the policy, it precludes staffing. There is no ambiguity between the two. The liability section of the policy specifically states that the liability limits can't be staffed. And that, when you compare it with the death page, does not leave room for ambiguity. Again, the distinguishing fact from cases that have found staffing is that the anti-staffing provision was broad, and it wasn't specific as to what limits it was referring. Here we've got anti-staffing language that refers both to the liability limits and to the uninsured limits. And that really is the deciding factor if we're going to get to the staffing question here. Excuse me. Lastly, I want to address the argument that the Allstate failed to offer uninsured motorist limits that match these staffing liability limits. The reason that there's no cases cited here talking about staffing of liability limits, in my opinion, is simple. You don't get to that question on liability because the liability coverage specifically applies and is inextricably tied to a motor vehicle. Each motor vehicle has certain liability limits.  The liability coverage kicks in because it has to arise out of the use, maintenance of the vehicle. And so that ties it back to those limits. Where staffing becomes an issue on uninsured coverage is because sometimes it doesn't have to be tied to a vehicle. A pedestrian can be hit, and then you can see uninsured motorist coverage. So the argument that the liability limits staff is inconsistent, first of all, with the purpose of liability coverage on a motor vehicle policy such as this, where you have multi-vehicles with different limits that the insurer chooses. Here, each liability limit was the same, but we've all seen plenty of policies where the liability limits may be different for a certain vehicle. As counsel indicated, this isn't a usual staffing case. The only way that Appellant's argument here can be successful is for the policy to be interpreted to provide $300,000 in liability limits. When you consider the policy as a whole, though, including those four specific anti-staffing provisions, you have to construe those together, and it doesn't create any ambiguity as to what the liability limits are. And therefore, there can be no argument that all states fail to offer uninsured motorist limits equal to that amount. The language in the policy and the coverage provided is consistent with the insurance code. The insurance code requires that a policy issued for a motor vehicle include uninsured motorist coverage in an amount equal to liability limits. Here, the plaintiff chose $100,000 in liability limits for each of his vehicles. Providing uninsured motorist coverage in that amount was consistent. He didn't select $300,000 in liability limits for those autos. The insurance code ties that requirement to offer an equal amount to the motor vehicle. And here, for each motor vehicle, he chose to get $100,000 in liability coverage, and he was provided $100,000 in uninsured motorist coverage. I will briefly address the Bowers case, the recent case out of the 3rd District that Mr. Alexander raised. In that case, as I've said, the policy language did not contain on the face of the deck page a provision precluding staffing like our policy does here today. This language takes away any question that the uninsured motorist coverage was not intended to be staffed. It also specifically addresses uninsured... I'm sorry, our policy, the Allstate policy here today, specifically addresses uninsured motorist limits and liability limits in its multiple anti-staffing provisions. In Bowers, there was only one anti-staffing provision at issue. It was a general provision that only addressed quote-unquote limits, not specifically referring to what limits that preferred. But what insurance company was Bower versus? I'm just curious. I can tell you.  Okay. And that was 3rd District? That was the 3rd District, and it came down in the beginning of November. In that case, they talked about that because there was only this use of the word limits, when you compare that language with the deck page, there could be an ambiguity. Again, here, we don't have that ambiguity because when you compare our policy language, that talks about in three sections, anti-staffing, and then the deck page, which also says anti-staffing for uninsured motorist coverage, you don't have that same ambiguity that the court in the 3rd District relied upon. Here, today, Mr. Alexander raised that perhaps the anti-staffing language in our policy is ambiguous. I do know for the court, that is not in the briefs. That wasn't raised in the trial court. In fact, it was the order that was entered by the trial court stated that there was no argument that the uninsured motorist coverage anti-staffing provision was ambiguous. The only argument made was that there was a question as to whether the liability limit staffed, and then whether, because those staffed, we did not offer the proper amount of uninsured motorist coverage. If there's no further questions, we ask that the trial court be affirmed for those reasons. I don't believe so. Thank you. Thank you. Counsel? Counsel? I hope, very briefly, that I will respond to just two issues. One, she talks about my client getting a windfall if the court finds for us. If that's the term, that's okay. But it's their policy that's being interpreted, their contract. And if they contract to pay this amount, then they are obligated, whether it's a windfall or not. The other thing is that it was addressed about liability and liability stacking. The court, when it looks at Hobbs, will recall that Hobbs reaffirmed this court in the case of Yates. That was specifically asked to be overruled, as I understand the Hobbs decision. The Hobbs court said, no, we affirm what was decided here in Yates. This court, a year after Yates, decided the Skidmore case, which is a case based upon liability coverage, and found that liability coverage does stack. Those, along with what was found in Hobbs, allows this court to stack the liability coverage in this case. I have nothing else. I believe we have two questions. Thank you. We appreciate the briefs and arguments of counsel. I will take the case under advisement. Thank you.